## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERYKN ALCANTARA ARAUJO,      :      No. 3:26cv110
         Petitioner      :

                          :      (Judge Munley)

     v.      :

WARDEN, PIKE COUNTY      :
CORRECTIONAL CENTER;      :
TODD LYONS, in his official capacity  :
as Acting Director of U.S.      :
Immigration and Customs      :
Enforcement; KRISTI NOEM, in her  :
official capacity as Secretary of      :
the United States Department of      :
Homeland Security; and      :
PAMELA BONDI, in her official      :
Capacity as Attorney General of      :
the United States,      :
          Respondents      :

## <u>MEMORANDUM ORDER</u>

Before the court is Erykn Alcantara Araujo's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The petition asserts that Araujo has been misclassified under 8 U.S.C. § 1225(b)(2)(A), that his due process rights have been violated by his detention under that statute, and that he is entitled to immediate release from the Pike County Correctional Facility ("Pike CCF"). After

reviewing Araujo's circumstances on an individual basis, the court will grant habeas relief and order that petitioner be provided with a bond hearing.[1]

Petitioner is a native of the Dominican Republic. He entered the United States in November 2022 near El Paso, Texas.[2] He encountered immigration authorities and turned himself over to the Department of Homeland Security ("DHS"), affirmatively requesting asylum. Araujo's petition asserts that he was screened for fear of persecution and received a positive and credible determination. He was charged with violation of Immigration and Nationality Act ("INA") §§ 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I).[3] At the same time, the government released the petitioner, and he was permitted to reside in the interior while his removal proceedings were pending. Araujo made his way to Pennsylvania.

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Araujo filed the instant petition while he was detained within the jurisdiction of this court, and he is still currently in ICE custody within this court's jurisdiction. Petitioner asserts that his continued detention violates his right to due process. He also asserts that the wrong provision of the INA is being used to justify his potentially indefinite detention. Thus, the court has habeas jurisdiction over Araujo's petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

[2] These facts are derived from Araujo's petition, (Doc. 1), and from the administrative records provided by the respondents, (Docs. 5-2 to 5-4).

[3] Specifically, the Notice to Appear charged Araujo as inadmissible pursuant to INA § 212(a)(6)(A)(i), codified at 8 U.S.C. §1182(a)(6)(A)(i), because he entered the country without being admitted or paroled. Petitioner was also charged as removable pursuant to INA § 212(a)(7)(A)(i)(I), codified at 8 U.S.C. §1182(a)(7)(A)(i)(I), because he was not in possession of a valid document as required by the Attorney General.

Approximately three years later, on October 31, 2025, the Hazleton Police Department arrested the petitioner and he was charged with terroristic threats in violation of 18 PA. CONS. STAT. § 2706(a)(1) and harassment in violation of 18 PA. CONS. STAT. § 2709(a)(1). On November 13, 2025, the charges were dismissed. Immigration and Customs Enforcement ("ICE") lodged a detainer while petitioner was jailed at the Luzerne County Correctional Facility. ICE took Araujo into its custody on November 15, 2025. He is currently detained at Pike CCF.

Once in ICE custody, Araujo requested a custody redetermination and bond hearing before an immigration judge ("IJ"). On November 26, 2025, the IJ concluded he lacked authority to conduct a bond hearing, citing Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). Following proceedings related to a California district court decision, Araujo again petitioned for bond. The IJ determined that he lacked authority to conduct a custody redetermination hearing under Matter of Q. Li, 29 I. & N. Dec. 66 (BIA 2025).

Araujo's present detention is the product of a revised policy under which individuals present in the United States without admission are treated as applicants for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) rather than discretionary detention under § 1226(a). Because Araujo is detained under 8 U.S.C. § 1225(b)(2)(A), according to the respondents, he is ineligible for a bond hearing.

3

This case, like many others before it, turns on whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) applies to the petitioner.  There is no decision of the Supreme Court or the Third Circuit Court of Appeals to guide the analysis.[4]  Most district court decisions to address the issue hold that individuals like Araujo are not subject to mandatory detention under Section 1225(b)(2)(A), including rulings by jurists in the Middle District of Pennsylvania.[5]  The issues here have been approached from just about every angle possible.  Most decisions reach the same conclusion, and the undersigned will not deviate from that majority view in this case.  Araujo's detention under Section 1225(b)(2)(A) violates the INA and due process.  Therefore, the petition for a writ of habeas corpus will be granted.  The court will order a bond hearing be held within the next 14 days.  If Araujo does not receive a bond hearing within that time, he will be ordered released.

Briefly, Section 1225(b)(2)(A) provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8

---

[4] A split panel of the Fifth Circuit Court of Appeals agrees with the respondents' view of Section 1225. See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026).  The dissenting opinion is more persuasive. Id. at 508–21 (Douglas, J.).

[5] See Meeran v. Rose, No. 3:26CV187, 2026 WL 540379, at *2 n.3 (M.D. Pa. Feb. 26, 2026) (collecting cases);  Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *4 n.4 (M.D. Pa. Feb. 26, 2026) (collecting cases).

U.S.C. § 1225(b)(2)(A).   Individuals detained under Section 1225 are not entitled to a bond hearing. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) (Alito, J., plurality op.) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

"*Applicant for Admission*" — Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  Definitionally, all unadmitted persons, including Araujo, are "applicants for admission."

"*Alien Seeking Admission*" — Unlike "applicant for admission," the phrase "alien seeking admission" is not defined in Section 1225.  Under the view adopted by the government every "applicant for admission" is an "alien seeking admission." This would subject all unadmitted aliens to mandatory detention without bond whether they are located at the border or have spent months or years living in the interior.  Under that reading, "for purposes of immigration detention, the border is now everywhere." Buenrostro-Mendez, 166 F.4th at 520 (Douglas, J., dissenting op.).

5

In contrast, the consensus district court view is that the phrase "alien seeking admission" does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry[,]" Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.) (citations omitted), and does not apply to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (Mariani, J.) (citations omitted).

As these district court cases and the Buenrostro-Mendez dissent have recognized, to adopt the government's position would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of "criminal aliens" under Section 1226(c) as arising from a redundant statutory provision, which was recently expanded. See Patel, 2025 WL 3516865 at *5 (citing Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.)); Buenrostro-Mendez, 166 F.4th at 509–16 (Douglas, J., dissenting op.).

Here, Araujo was residing in the interior of the United States for approximately three years when he was re-arrested and re-detained. "[T]he difference in treatment between a noncitizen at the border and one already in the

6

United States fits within the broader context of our immigration law." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025). Consequently, a reading of Section 1225(b)(2)(A) against petitioner's circumstances reflects that this statute does not apply to him.

At this point, Araujo's detention would be governed by Section 1226(a). Jennings, 583 U.S. at 288 (Alito, J., plurality op.).  Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.' " Id. (quoting 8 U.S.C. § 1226(a)).  Pending such decision, the Attorney General may: 1) "continue to detain the arrested alien"; and 2) "may release the alien on…bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or…conditional parole[.]" 8 U.S.C. § 1226(a)(1)–(2); see also 8 C.F.R. §§ 1003.19, 1236.1(c)(8), 1236.1(d)(1).  "At a bond hearing, a noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.' " Quispe, 2025 WL 3537279, at *6 (quoting Nielsen v. Preap, 586 U.S. 392, 397–98 (2019)).

In this particular matter, the court will order that Araujo receive a fair and impartial bond hearing before an IJ.  Given his two prior attempts to secure a bond hearing, he will be ordered released if he does not receive one in 14 days.

Araujo enjoys the protections of the Due Process Clause of the Fifth Amendment. Trump v. J. G. G., 604 U.S. 670, 673 (2025).  Whether Araujo's continued detention under 8 U.S.C. § 1225(b)(2)(A) violates procedural due process requires a consideration of: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The factors favor providing Araujo with a bond hearing.  First, his private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).  "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted).  Second, he has been detained erroneously under Section 1225(b) without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and

incarcerate him indefinitely."); see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025); Quispe, 2025 WL 3537279, at *7 (citations omitted).

As to the third consideration, the government has an interest in detaining noncitizens to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through detention without any individualized determination that this petitioner poses a flight risk or danger. But this goes too far.

Similarly, Araujo's recent shift in his request for relief exceeds the due process required to satisfy the Constitution in this case. Initially, Araujo petitioned for a bond hearing or, in the alternative, immediate release with conditions. (Doc. 1, Pet. at ECF pp. 13–14). More recently, he has filed a motion for a temporary restraining order seeking immediate supervised release. (Doc. 7, at ECF p. 10).

Araujo's initial request is more appropriate. The Mathews framework permits intermediate safeguards, so long as they provide enough process to protect Araujo's interests and reduce the risk of error, while still permitting the government to detain where detention is a justifiable outcome.

9

Unlike the vast majority of other immigration detention petitioners who have recently come before the court, Araujo has been involved in the criminal justice system during his time in the United States.  Here, the record indicates that Araujo was charged with terroristic threats and harassment, which may or may not have been related to allegations of domestic violence.

In other cases, petitioners were detained without any intervening event that could supply even an arguable factual predicate for the government's custody decision.  In the court's assessment, the detention of those petitioners were the product of unfettered executive discretion using a process designed to make their circumstances unreviewable through the existing system.

Araujo's circumstances are different.  He came to the government's attention through state criminal proceedings.  Those proceedings ended in dismissal.  Nonetheless, the fact that state authorities at one point initiated criminal process—even process that yielded no conviction—creates a factual question.  Specifically, the dismissed charges may bear on the government's assessment of flight risk or dangerousness, or they may not.  The nature of the charges, the reasons for dismissal, Araujo's ties to the community, his compliance with prior legal obligations, and the anticipated duration of removal proceedings are all matters that must be thoughtfully considered.  An IJ acting as

10

a neutral decisionmaker is better positioned to evaluate Araujo's individualized factual circumstances than a district court on habeas review.

After all, habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008). Faced with similar petitions in this district, other rulings have resulted in individualized bond hearings, not outright release. Patel v. O'Neill, No. 3:25-CV-02181, 2026 WL 675558, at *1 (M.D. Pa. Mar. 10, 2026) (Saporito, J.); Singh v. Lowe, No. 3:26cv8, 2026 WL 660583, at *8 (M.D. Pa. Mar. 9, 2026); Hayat v. O'Neill, No. 3:25cv0416, 2026 WL 561200, at *7 (M.D. Pa. Feb. 27, 2026); Singh v. Lyons, No. 3:25CV2388, 2026 WL 524267, at *6 (M.D. Pa. Feb. 25, 2026) (Munley, J.); Diaz Aparicio v. Lowe, No. 3:25cv2413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026); Cunin, 2025 WL 3542999, at *2 (ruling on motion for temporary restraining order); Hernandez v. Rose, No. 1:25-CV-2221, 2025 WL 3284447, at *3 (M.D. Pa. Nov. 25, 2025) (Neary, J.) (same).

Nonetheless, Section 1226(a) applies to petitioner, and he has been held without a bond hearing for four months. A release order will be issued if the respondents do not provide Araujo with an individual bond hearing in the next two weeks. That is, if respondents provide a bond hearing within 14 days that

11

complies with the above-discussed procedural protections, the IJ's determination as to the conditions or denial of bond will govern. If respondents fail to provide an individualized bond hearing within that period, Araujo will be ordered released on his own recognizance.

Accordingly, it is hereby **ORDERED** that:

1) Erkyn Alcantara Araujo's petition for writ of habeas corpus, (Doc. 1), is **GRANTED**;

2) Respondents shall provide Araujo with a bond hearing within 14 days.

3) Otherwise, Araujo will be ordered released without bond or conditions.

4) On or before **April 3, 2026**, respondents shall file an affidavit or declaration pursuant to 28 U.S.C. § 1746 confirming that Araujo has been provided with a bond hearing;

5) The motion for a temporary restraining order, (Doc. 7), is **DISMISSED** as moot; and

6) The Clerk of Court is directed to close this case.

Date: 3/17/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

12